**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| VIATECH TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | **Case No. _____** |
| v. | ) | |
| | ) | |
| MICROSOFT CORPORATION, | ) | **DEMAND FOR JURY TRIAL** |
| | ) | |
| Defendant. | ) | |

**COMPLAINT FOR PATENT INFRINGMENT**

Plaintiff ViaTech Technologies, Inc. ("plaintiff" or "ViaTech"), through its attorneys, for its complaint against defendant Microsoft Corporation ("defendant" or "Microsoft"), alleges as follows:

**THE PARTIES**

1. Plaintiff is a corporation organized and existing under the laws of the State of Delaware having a place of business at 1136 Ashbourne Circle, Trinity, FL 34655-7103.

2. Defendant Microsoft is a corporation organized and existing under the laws of the State of Washington having its principal place of business at One Microsoft Way, Redmond, WA 98052.

**JURISDICTION AND VENUE**

3. This action arises under the patent laws of the United States, Title 35 of the United States Code. Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4. Defendant Microsoft is subject to this Court's specific and general personal jurisdiction consistent with due process and the Delaware Long Arm Statute, 10 *Del. C.* § 3104.

1

5. Microsoft is registered to do business in Delaware, and has appointed Corporation Service Company, 2711 Centerville Rd., Suite 400, Wilmington, DE 19808, as its registered agent, and either directly, or indirectly through its distribution network, has transacted and/or continues to transact business in Delaware, and has regularly solicited and continues to regularly solicit business in Delaware. Microsoft has also engaged in substantial activity within the State of Delaware and derives substantial revenue from goods or services provided to individuals in Delaware. Microsoft owns and operates a Microsoft Store located within this Judicial District at 137 Christiana Mall, Newark, DE 19702, that offers for sale, and sells, its software products to customers within the state of Delaware, and offers technical support to customers within this Judicial District purchasing its software products. In a partnership with the Best Buy retail store chain, Microsoft also operates The Windows Store, located within this Judicial District at 4807 Concord Pike, Wilmington, DE 19803, that offers for sale, and sells, its software products to customers within the state of Delaware, and offers technical support to customers within this Judicial District purchasing its software products. Microsoft also owns and operates its online Microsoft Store, which also offers for sale, and sells, its software products to customers within this Judicial District, and offers technical support to customers within this Judicial District purchasing its software products.

6. Microsoft has also committed tortious acts within the State of Delaware, and the causes of action set forth in this Complaint arise from those acts. Microsoft develops, manufactures, distributes, and licenses software products having anti-piracy features, which infringe the patent asserted in this action, and which are, and have been, offered for sale, sold (directly or through defendant's retail stores and distribution network), purchased, and used in this Judicial District. Microsoft, directly or through its distribution network, also places

infringing products within the stream of commerce, with the knowledge and/or understanding that such infringing products will be sold and/or used in the State of Delaware.

7. Venue in this Judicial District is proper under 28 U.S.C. §§ 1391 and 1400(b).

## FACTUAL BACKGROUND

**ViaTech's Patented Technology**

8. ViaTech was founded in 1995, and has pioneered and patented digital rights management technologies that serve to protect digital content, such as executable computer programs, from unlawful copying.  ViaTech markets and sells its eLicense System™, which is a turnkey solution for owners and distributors of digital properties who need to securely handle license management for the digital content that they distribute via e-commerce or other distribution methods.

9. On July 19, 2005, U.S. Patent No. 6,920,567, entitled "System and Embedded License Control Mechanism for the Creation and Distribution of Digital Content Files and Enforcement of Licensed Use of the Digital Content Files" ("the '567 patent," attached as Exhibit A), was duly and legally issued by the United States Patent and Trademark Office.  ViaTech is the owner by assignment of all rights, title, and interest in and to the '567 patent, including the right to sue for past infringement.

10. ViaTech's patented technology relates to, *inter alia*, software products having anti-piracy features for controlling the use of digital content, as well as methods for distributing such products and providing licenses for enforcing the licensed use of such products.

11. One of the features of ViaTech's patented technology is the use of a dynamic license database that resides, for example, on a user's computer and contains license information relating to the conditions for use of the protected digital content.  The license information in the

dynamic license database may be initially stored in a software product or provided to a user from an external system (*e.g.*, from a software publisher/distributor/reseller) and can be modified and updated as needed.  The information in the dynamic license database may include, for example, the type of licenses available to a user, the current license state, the duration of a license and expiration settings, the number of executions allowed and the number of executions used, and a user system identifier or "fingerprint."  When a user attempts to access the protected digital content, an embedded file access control mechanism (which includes a license monitor and control mechanism) determines whether such use complies with the license parameters in the dynamic license database.   Some information in the dynamic license database, such as the type of license available to a user or the current license state, is accessible to the user through a graphical user interface ("GUI"); other information, such as the system fingerprint, is used to communicate license definition information between the user's system and an external system.

12.    Another feature of ViaTech's patented technology is the use of an adaptive fingerprint security mechanism.  When a user attempts to access the protected digital content, this mechanism compares the system fingerprint for the device where access is attempted to the system fingerprint contained in the dynamic license database.  The license monitor and control mechanism of the file access control mechanism is responsive to this comparison, and permits access only if the two fingerprints are within a predetermined range of tolerance.  This adaptive fingerprint feature can be used to identify a system that has been changed or modified from an originally licensed configuration, and a relative weighting, in terms of importance, can be performed of the elements selected to form the system fingerprint.  In addition, if the two fingerprints are within a predetermined range of tolerance and the license check is passed, the

license monitor and control mechanism may replace the system fingerprint previously stored in the dynamic license database with the current system fingerprint.

**Microsoft's Infringing Products and Conduct**

13.  Microsoft designs, develops, manufactures, tests, markets, licenses, supports and sells software programs, including its "Windows" line of operating system software.  Versions of Windows® operating system software products have been sold by Microsoft under a number of different product names, including but not limited to "Windows Vista," "Windows 7," "Windows 8," and "Windows 8.1."

14.  Microsoft also designs, develops, manufactures, tests, markets, licenses, supports and sells Microsoft Office software, which bundles office productivity applications such as Word, Outlook, Excel, and PowerPoint.  Versions of Microsoft Office software products have been sold by Microsoft under a number of different product names, including "Office 2007," "Office 2010," "Office 2013," and "Office 365."

15.  There are multiple ways a customer can purchase or license Windows products from Microsoft, for example, (1) buy a new PC with Windows preinstalled; (2) upgrade an existing PC using a retail package; (3) purchase an upgrade online; or (4) build a PC from scratch and install Windows.

16.  There are three types of licenses available from Microsoft for its Office products: (1) "perpetual," which permits use of the licensed program as long as the user owns the product; (2) "subscription," which permits use of the program for a predetermined time period; and (3) "product trial program," which permits use on a limited trial basis.  Microsoft offers a "convert" option for its "product trial program" license, which allows a product trial user to convert that license to either a perpetual license or a subscription license.

17.     Microsoft utilizes one or more license control mechanisms in connection with the creation, sale, licensing, and distribution of its Windows and Office software products. These security mechanisms are referred to generally by Microsoft as "product activation" features. Microsoft describes "product activation" on its website as "an anti-piracy technology designed to verify that software products have been legitimately licensed" and as a method to "prevent software counterfeiting."

18.     Activation is mandatory pursuant to Microsoft's Software License Terms, which state that unless the software is activated, a user has "no right to use the software after the time permitted for activation."

19.     Microsoft refers to its product activation features in Windows Vista as its "Software Protection Platform," and in Windows 7 and subsequent Windows updates as its "Windows Activation Technologies."

20.     Windows performs a licensing check when it is started, and either prompts a customer to activate, or automatically attempts to activate, if the product has not yet been activated.

21.     During activation, Windows "pairs your product key with your hardware configuration and helps verify that your copy of Windows hasn't been used on more computers than the Microsoft Software License Terms allow. Usually, you need to activate Windows only once, unless you make a significant hardware change." Windows evaluates the user's system fingerprint based on a pre-set, determined range of tolerance, which considers the nature and magnitude of any changes to the user system's hardware, before permitting access to its digital content. As explained on Microsoft's website: "[w]hen you make a significant hardware change

to your computer, such as upgrading the hard disk and memory at the same time, you might be required to activate Windows again."

22. The Windows Activation Technologies utility and the Software Protection Platform cause program files (including the files "slsvc.exe" or "sppsvc.exe") to be installed on the user's computer that control access to Windows, also cause Windows activation keys and subkeys to be added to the registry of a user's computer, and in addition cause data files (including the file "tokens.dat") to be created on a user's computer, that contain, among other things, information about the licensing and activation status of the operating system.

23. Windows provides a mechanism for communicating between the user system and Microsoft in order to communicate license definition information, and provides a graphical user interface ("GUI") for communications between the user and user-accessible functions of the Windows Activation Technology utility and Software Protection Platform.

24. In its Office 2007 and Office 2010 software products, Microsoft implements its product activation features through the "Microsoft Office Activation Wizard." In its Office 2013 software products, activation is automatic if the user is connected to the internet during installation, or re-installation. If the user is not connected to the internet, activation is implemented through the Activation Wizard. In its Office 365 software products, activation is automatic during installation, or re-installation.

25. Microsoft's Office software products perform a licensing check every time a user starts an Office application. If a user fails to activate an Office product, Microsoft sends an activation reminder each time the user starts an Office application. As explained by Microsoft on its website, "[t]he reminder helps make sure that you are aware that license activation is

required and that you can complete the product activation process before the program enters reduced functionality mode."

26. As also explained by Microsoft on its website, the Microsoft Office product activation feature creates a hardware identification that "represents the configuration of your PC at the time of activation." The Office product activation feature also "can detect and accept changes to your PC configuration" on which Office has been installed such that "[m]inor upgrades will not require re-activation," but major changes to the computer over time may require reactivation.

27. The Microsoft Office product activation feature provides a mechanism for communicating between a user's system and Microsoft in order to communicate license definition information and activate Office. The Microsoft Office product activation feature also provides a GUI for communications between the user and user-accessible functions of the Microsoft Office product activation feature. Similar to Windows, the Microsoft Office product activation feature causes program files (including the file "osppsvc.exe") to be installed on the user's computer that control access to Office applications, also causes Office activation keys and subkeys to be added to the registry of a user's computer, and in addition causes data files (including the file "tokens.dat") to be created on a user's computer, that contain, among other things, information about the licensing and activation status of the software.

28. Materials created by Microsoft (available at, *e.g.*, http://technet.microsoft.com and http://support.microsoft.com) instruct customers how to purchase, use and activate Windows and Office products in accordance with one or more of the claims of the '567 patent, as set forth in detail below.

29. Microsoft Windows and Office are distributed through three separate channels:

(1) retail; (2) volume licensing; and (3) original equipment manufacturer ("OEM") pre-install. Microsoft requires activation of its products that are distributed through any of these channels.

30.  When installing a retail copy of Windows or Office, a user is asked to input a unique product key supplied on a certificate of authenticity included with the program, or a unique product key is automatically assigned to the copy of Windows or Office, which is verified during activation.  When activating through the internet, a "Product ID" (derived from the installation product key) and a "Hardware ID" (derived from the hardware components in a user's computer) are sent to Microsoft, and a response is sent back by Microsoft to the user's computer in order to activate the product.  Windows and Office programs must be activated within a specific period of time in order to continue to function properly.

31.  Certain versions of Windows and Office, such as Office 2013, are available under a Microsoft volume license, where a single product key is used for multiple installations. Microsoft software products purchased under a volume license must still be activated, and users receive activation notifications until the product is activated.

32.  If Windows is pre-installed on a computer by an OEM, the operating system is automatically activated without the need for interaction from the user.  Copies of Windows installed by OEMs use a master product key issued to each OEM called a System Locked Pre-installation (SLP) key.  After each boot of these pre-install systems, Windows confirms the presence of specific information stored in the BIOS by the manufacturer, ensuring that activation only remains valid on that computer.

33.  If activation is not performed within a given grace period, or if activation fails, Windows products cannot be used until the activation process is completed successfully, or will boot only into a reduced functionality mode, or will notify the user that the copy of Windows in

question is not valid and will continue to provide periodic reminders to activate the operating system. For Office products, the programs will enter a reduced functionality mode, where files can be viewed but not edited.

**Microsoft's Knowledge of the '567 Patent**

34.     Microsoft has had knowledge of the '567 patent since at least as early as September 20, 2005, when the '567 patent was cited by an Examiner of the U.S. Patent and Trademark Office ("PTO") during prosecution of U.S. Patent No. 7,366,915 ("the '915 patent") assigned to Microsoft, which describes "a digital license with referral information where the digital license is tied to a first computing device or persona and not a second computing device or persona." In a response to a December 12, 2005 Office Action during prosecution of the application that led to the '915 patent, Microsoft discussed the '567 patent, and its subject matter, in extensive detail. As an example, in that response, Microsoft discussed the license control mechanism, the dynamic license database, and the adaptive fingerprinting features described and claimed in the '567 patent, noting that:

> The ['567 patent] discloses in great detail a system for rendering content according to a license. In particular, in the Doherty system, the content is placed within a digital content file that includes a license control mechanism controlling the licensed use of the content.

And also noting that:

> The digital content file also includes a license database that can store one or more licenses for rendering the content. The license control mechanism communicates with the license database and controls use of the digital content, and has a utility that allows for communicating between a user system and an external system to communicate license definition information. Thus, such license definition information may be stored initially in the license database when the digital content file is initially received, or if not present as initially received may be acquired from the external

system. Upon such acquisition, such a license is stored in such database.

And further noting that:

> Significantly, the license information for each license as residing in the license database also includes system fingerprint information identifying a user system on which the digital contents are licensed for use, and the license control mechanism further includes an adaptive fingerprint security mechanism responsive to an attempted access of the digital contents for obtaining current system fingerprint information from the user system and comparing the current system fingerprint information with the system fingerprint information in the dynamic license database. Thus, such fingerprint information and mechanism ensures that the content in the file is rendered on a particular user system according to a particular license only if the license is for the particular user system.

35. Microsoft has also discussed the '567 patent and its contents in detail in connection with the prosecution of at least U.S. Patent No. 7,644,442, which describes Microsoft's "[p]roduct activation" features for reducing software piracy, and U.S. Patent No. 8,224,750, which describes "a method and a system for changing license rights to a software product installed on a computer," both of which are also assigned to Microsoft. Microsoft has itself cited the '567 patent in Information Disclosure Statements in connection with the prosecution of numerous other patents assigned to Microsoft, including U.S. Patent Nos. 7,873,578; 7,552,341; 7,849,329; 8,181,265; 7,716,476; 8,117,094; 8,336,085; 8,464,348; 8,176,564; 8,353,046; 8,347,078; 8,781,969; 8,725,646; 8,719,171; and 8,700,535.

**COUNT ONE – INFRINGEMENT OF U.S. PATENT 6,920,567**

36. Plaintiff incorporates by reference Paragraphs 1 through 35 in their entirety as if fully set forth herein.

37. Microsoft has made, used, sold, and/or offered to sell in the United States, and/or imported into the United States, and will continue to make, use, sell, and/or offer to sell in the

United States, and/or import into the United States, software products with activation features, including but not limited to Windows Vista, Windows 7, Windows 8, Windows 8.1, Office 2007, Office 2010, Office 2013, and/or online extensions or subscription-only versions of these products such as Office 365, that infringe and that are distributed, licensed and/or used in a manner that infringes one or more claims of the '567 patent as set forth more fully below, whether directly through Microsoft's creation, use, offer to sell, sale, distribution, and licensing of its Windows and Office products, or indirectly through Microsoft's contributing to and/or inducement of others' use.

38. Microsoft has been and is now directly infringing the '567 patent by making, using, selling, and offering to sell in the United States, and/or importing into the United States, without authority from plaintiff, Windows and Office products with activation features that fall within the scope of at least claims 1, 2, 3, 4, 5, 6 and 7, and claims 13, 14 and 15, of the '567 patent.

39. By way of example, Microsoft's Windows and Office products include, *inter alia*, executable code; a dynamic license database that resides on a user's computer and is associated with the executable code, and that stores license information for controlling the use of such executable code; an embedded file access control mechanism having a license functions mechanism with (i) a license monitor and control mechanism that communicates with the dynamic license database and monitors use of digital content to determine whether the use of such content complies with the license defined in the dynamic license database, and (ii) a license control utility providing communications between the user system and an external system to communicate license definition information, with an associated GUI that provides communications between the user and user-accessible functions of the license functions

mechanism. These products also include an adaptive system fingerprint security mechanism that obtains current system fingerprint information from the user system when access is attempted and compares that information with the system fingerprint information in the dynamic license database. The license monitor and control mechanism is responsive to that comparison and permits access only when the two fingerprints are within a predetermined range of tolerance.

40. As another example, the dynamic license database in the Microsoft Windows and Office products includes user-accessible information that defines a license available to a user. The license control utility in Microsoft's Windows and Office products is responsive to a user request for activation of a license defined in the dynamic license database. If the system information and user request comply with the license defined in the dynamic license database, the system fingerprint information is written into the dynamic license database and the license is activated.

41. Microsoft also has been and is now directly infringing the '567 patent by distributing Windows and Office products (and/or directing and controlling the actions of its customers during distribution by requiring activation) in a manner that falls within the scope of at least claims 28, 29 and 30 of the '567 patent. Microsoft also has been and is now directly infringing the '567 patent by providing licenses for Windows and Office products (and/or controlling and directing the actions of its customers in the course of providing such licenses by requiring activation) in a manner that falls within the scope of at least claims 31 and 32 of the '567 patent.

42. By way of example, when distributing its Windows and Office products, Microsoft prepares a licensable digital content file that includes, *inter alia*, a dynamic license database and an adaptive fingerprint security mechanism, and provides that file to a user through

13

Microsoft's distribution system. Microsoft has designed its products such that, when installed on a user system, the software can access the user system in order to determine the requirements for a license, or licenses, that may be obtained by the user, obtain a system fingerprint, execute requirements defined in the initial license information to obtain license information defining a license that allows use of the digital contents, and write the license information and system fingerprint into the dynamic license database for controlling licensed use of the Windows and Office products.

43. Microsoft controls and directs the actions of its customers during the activation process through at least the contractual obligations set forth in Microsoft's Software License Terms, as well as through reminders to its users to perform the required activation and/or through downgrading a user's program to a reduced functionality mode until the user activates the product as directed. Microsoft's direction and control of the actions of its customers encompasses the steps performed on a user's system during the mandatory activation and license checking processes.

44. Plaintiff has given notice of its patent by placing the '567 patent number on its website through which the products that it manufactures are sold, and, in addition, has provided written notice to Microsoft of Microsoft's infringement of the '567 patent, and of this Complaint, specifying Microsoft's infringing conduct, prior to filing its Complaint in this Court.

45. Microsoft has been and is now inducing the infringement of the '567 patent by making, offering for sale, selling, advertising and/or marketing to customers, such as OEMs and end users who are not licensed by plaintiff, Windows and Office software products with product activation features whose use by those customers directly infringes at least claims 1, 2, 3, 4, 5, 6 and 7, and claims 13, 14 and 15, of the '567 patent, as described in more detail above.

46.     Microsoft encourages and instructs its customers, including OEMs and end users who are not licensed by plaintiff, to infringe with knowledge that the induced acts constitute patent infringement.  Microsoft has been and is now intentionally requiring, instructing and directing OEMs and end users of its Windows and Office products who purchase, use and/or otherwise implement those products in their respective systems to use the product activation features of those products in order for the software products to function properly, with knowledge of the patented invention of the '567 patent, as described in more detail above, and knowing that, by doing so, the OEMs and end users infringe.  Microsoft possesses specific intent to encourage infringement by its customers.  Microsoft has control over the design and manufacture of its Windows and Office products that include product activation features, and possesses specific intent to cause infringement by the use of these products as described in more detail above.

47.     Microsoft has been and is now contributing to the infringement of the '567 patent by selling and offering to sell within the United States Windows and Office software products with components that perform product activation functions that are a material part of the claimed inventions of the '567 patent, with knowledge that these components are especially made and adapted for use in infringing at least claims 1, 2, 3, 4, 5, 6 and 7, and claims 13, 14 and 15, of the '567 patent, as described in more detail above.  There are no substantial non-infringing uses for the product activation components in Microsoft's Windows and Office products.  Those product activation features are required, and control access to those products each time they are launched on a user's computer or other device, as also described in more detail above.

48.     Microsoft has been, and is, willfully infringing the '567 patent. Microsoft became aware of plaintiff's '567 patent, and the subject matter claimed in that patent, at least as early as

15

September 20, 2005.  Despite its knowledge of the '567 patent, the subject matter claimed in that patent, and Microsoft patent applications describing the license management and anti-piracy features of its Windows and Office products, Microsoft introduced, offered for sale and sold, and continues to offer for sale and sell, its Windows and Office products, knowing that those products include a dynamic license database, and an adaptive fingerprint security mechanism, as well as the other features described and claimed in plaintiff's patent, as described in more detail above.  Microsoft has acted knowingly, or with reckless disregard of the '567 patent, despite an objectively high likelihood that its actions constitute infringement of plaintiff's valid patent rights.  Microsoft knew of, or should have known of, this objectively high risk.

49. As a result of Microsoft's acts of infringement, plaintiff has suffered and will continue to suffer damages in an amount to be proven at trial, unless enjoined by the court.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for the following relief:

A. A judgment in favor of plaintiff that defendant has infringed, directly, and/or indirectly by way of inducement or contributory infringement, the '567 patent;

B. A preliminary and permanent injunction against Microsoft, its respective officers, agents, servants, employees, attorneys, parent and subsidiary corporations, assigns and successors in interest, and those persons in active concert or participation with them, enjoining them from infringement, inducement of infringement, and contributory infringement of the '567 patent, including but not limited to an injunction against making, using, selling, and/or offering for sale within the United States, and importing into the United States, any products and/or services that infringe the '567 patent;

C.  An award to plaintiff of damages pursuant to at least 35 U.S.C. § 284 for defendant's infringement and any continuing or future infringement, including both compensatory damages and treble damages for defendant's willful infringement;

D.  An award to plaintiff of pre-judgment and post-judgment interest on its damages;

E.  A declaration that this case is exceptional pursuant to 35 U.S.C. § 285, and awarding a judgment and order requiring defendant to pay the costs of this action (including all disbursements) as well as plaintiff's attorneys' fees; and

F.  Such other further relief in law or equity to which plaintiff may be justly entitled.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff hereby demands a trial by jury as to all issues so triable.

Dated:  September 24, 2014                    Respectfully submitted,

  /s/ James D. Taylor, Jr.

James D. Taylor, Jr. (#4009)
SAUL EWING LLP
222 Delaware Avenue, Suite 1200
Wilmington, DE 19899
Telephone:  (302) 421-6800
Facsimile:  (302) 421-6813
Email:  jtaylor@saul.com

Michael J. Lennon (*pro hac vice* pending)
Sheila Mortazavi (*pro hac vice* pending)
KENYON & KENYON LLP
One Broadway
New York, NY 10004-1007
Telephone:  (212) 425-7200
Facsimile:  (212) 425-5288
Email: mlennon@kenyon.com
Email: smortazavi@kenyon.com

Attorneys for plaintiff
VIATECH TECHNOLOGIES, INC.